IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BREYONN GARRISON,

    PLAINTIFF,

V.                                                                        CIVIL ACTION NO. 2:17CV-382

TRI-DIM FILTER CORPORATION.,

    DEFENDANT.                                          JURY TRIAL DEMANDED

## COMPLAINT

**I.   JURISDICTION**

    1.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1334(4), 1343(4), 2201, 2202 and pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq*. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights secured by the ADA.

    2.    Plaintiff timely filed his charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A). Plaintiff further filed this lawsuit within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

## II. PARTIES

3. Plaintiff, BREYONN GARRISON, (hereinafter "Plaintiff") is a resident of Montgomery, Montgomery County, Alabama, and performed work for the Defendant in the counties composing the Northern/Middle/Southern District of Alabama during the events of this case. Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Middle District, Northern Division.

4. Defendant, TRI-DIM FILTER CORPORATION. (hereinafter "Defendant"), is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama. Defendant is an entity subject to suit under 28 U.S.C. § 1331 and 42 U.S.C. § 12101, *et seq*. Defendant employs at least twenty (20) persons. Therefore, this Court has personal jurisdiction over Defendant.

## III. STATEMENT OF FACTS

5. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-4 above.

6. Defendant hired Plaintiff on February 16, 2014.

7. At all times while employed with Defendant, Plaintiff performed his job duties in a competent or better manner.

8. Defendant terminated Plaintiff's employment on or about August 2, 2016.

9. At the date Defendant terminated Plaintiff's employment, he held the position of Team Leader.

10. On or about October 23, 2014, Plaintiff was diagnosed with Multiple Sclerosis sleep apnea, and depression.

11. On or about December 5, 2015, Plaintiff's doctor emailed Plaintiff's supervisor, Thomas Tersigni, that because of his disability that he could not perform some of the job functions that he had in the past, such as "pre-wash."

12. Defendant requires that employees take a yearly drug urine test and attend a safety class.

13. In July 2016, Plaintiff's badge had expired and indicated that it was time for him to take his yearly safety class and drug test.

14. Plaintiff submitted to Defendant's annual drug test that was administered by LabCorp.

15. Plaintiff informed LabCorp about his taking regularly prescribed medication.

16. LabCorp's test came back showing a positive result for hydrocodone.

17. Plaintiff explained to Defendant that he had prescription for hydrocodone to manage his MS and that he had been taking this medication for months and it had not interfered with the performance of the essential job functions of his job in any way.

18. Defendant terminated Plaintiff for having the hydrocodone, as prescribed by his doctor to treat his disability, in his blood stream during the annual drug test.

## IV. COUNT ONE – ADA – Disability Discrimination

19. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-18 above.

20. Plaintiff suffers from the disabling condition diagnosed as Multiple Sclerosis.

21. Plaintiff's Multiple Sclerosis (MS) affects the major life activity of performing manual tasks, seeing, hearing, walking, standing, lifting, and affects the functions of the neurological and brain functions.

22. Defendant was aware of Plaintiff's record of disability as it employed Plaintiff from the time of his diagnosis of MS to the date of his termination.

23. Plaintiff's supervisor, Thomas Tersigni, received an email from Plaintiff's physician requested a reasonable accommodation regarding a specific job duty on or about December 4, 2015.

24. Plaintiff was qualified for his position as Team Lead with or without a reasonable accommodation.

25. In July, (FNU) Murphy informed Plaintiff that his badge had expired and indicated that it was time for him to take his yearly safety class and drug test.

26. Murphy had knowledge of Plaintiff's MS and that Defendant accommodated his need to not engage in pressure watching duties.

27. Plaintiff submitted to Defendant's annual drug test that was administered by LabCorp.

28. Plaintiff informed LabCorp about his taking regularly prescribed medication.

29. LabCorp's test came back showing a positive result for hydrocodone.

30. Plaintiff explained to Defendant that he had a prescription for hydrocodone to manage his MS and that he had been taking this medication for months and it had not interfered with the performance of the essential job functions of his job in any way.

31. Defendant terminated Plaintiff for having the hydrocodone, prescribed by his doctor to treat his disability, in his blood stream during the annual drug test.

32. But for Plaintiff's disability, Defendant would not have terminated Plaintiff's employment.

33. In terminating Plaintiff's employment, Defendant violated the ADA because of Plaintiff's disability.

34. As a result of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits and mental anguish.

## VI. COUNT TWO – ADA – Perception - Disability

35. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-34 above.

36. But for Defendant's perception of Plaintiff having a disability, Defendant would not have terminated Plaintiff's employment.

37. In terminating Plaintiff's employment, Defendant violated the ADA because of Defendant's perception of Plaintiff having a disability.

38. As a result of Defendant's violation of the ADA, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

## VII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the ADA;

B. Enter an Order requiring the Defendant to make Plaintiff whole by awarding him the position he would have had, had he not been discriminated against;

C. Award him back pay, together with employment benefits, front pay; compensatory damages; punitive damages; special damages; nominal damages;

D. Attorneys' fees and costs;

E.   Plaintiff requests that the Court award Plaintiff equitable relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 12101 that the actions of Defendant violate the law; and,

F.   Any different or additional relief as may be determined by the Court to which Plaintiff is entitled.

_____
ALLEN D. ARNOLD

_____
KIRA FONTENEAU

OF COUNSEL:

FONTENEAU & ARNOLD, LLC
2151 Highland Avenue South, Ste. 110
Birmingham, Alabama 35205
(205) 252-1550 – Office
(205) 502-4476 – Facsimile

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

_____
OF COUNSEL

DEFENDANT'S ADDRESS:

Tri-Dim Filter Corporation
c/o CT Corporation System
2 North Jackson Street
Montgomery, AL 36104